UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RECEIPT # _60884_
AMOUNT $ _350_
SUMMONS ISSUED _Y - 6_
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK. _M_
DATE _3 -16 -05_

Vincent F. Zarrilli

Case No.

v

1. The Office of the United States
   Supreme Court Clerk
2. William K. Suter, Chief Clerk
   United States Supreme Court
3. Jeffrey Atkins, Assistant Clerk
   United States Supreme Court
4. Christopher Vasil, Assistant Clerk
   United States Supreme Court
5. Jane Doe, Assistant Clerk
   United States Supreme Court
6. The United States of America

**05 - 10501 RCL**

MAGISTRATE JUDGE _____

## COMPLAINT FOR DECLARATORY AND CIVIL RIGHTS RELIEF

### INTRODUCTION

1.    Vincent F. Zarrilli brings this 42 U.S.C. §1983 action against three named clerks and one unknown clerk of the U.S. Supreme Court for wrongfully and unconstitutionally and in violation of the clerk's mandatory, non discretionary duties to record, file and docket all motions filed in connection with a petition for certorari.  Thus depriving a plaintiff of his clearly established constitutional right of access to the courts and to have all his papers considered in connection with his certorari petition.

2.    Specifically, the clerks failed to docket a motion to recuse Justice Stephen Breyer (Exhibit A) filed in connection with Zarrilli's petition for certorari in the matter of Zarrilli v. F.D.I.C. No. 01-8719.  As a result of the wrongful non docketing of the motion to recuse Justice Breyer, Zarrilli's petition for certorari was denied on April 15, 2002,

without the motion to recuse being part of the certorari petition consideration. Had the matter been correctly handled, each justice of the U.S. Supreme Court would have <u>first</u> received Zarrilli's recusal motion and then the certorari petition and appendices. As a result of the clerk's failures, no justice, including Justice Breyer was ever aware of a lawful substantial disqualifying motion, which each justice would have to vote upon separately if Justice Breyer did not recuse himself after receiving it. The clerks had absolutely no authority to <u>hide</u> all eleven disqualification motions.

<div align="center">PARTIES</div>

3.    Plaintiff, Vincent F. Zarrilli is a U.S. citizen with an address of P.O. Box 101, Hanover Station, Boston, MA 02113. The Plaintiff the assignee of all right and assets of The Pot Shop, Inc. under an Assignment circa January 7, 1970.

4.    Defendant, William K. Suter, Chief Clerk of the U.S. Supreme Court, is a defendant with a usual place of business at 1 First Street NE, Washington, D.C. 20543.

5.    Defendant, Assistant Clerk, Jeffrey Atkins, of the U.S. Supreme Court is a defendant with a usual place of business at 1 First Street NE, Washington, D.C. 20543.

6.    Defendant, Christopher Vasil, Assistant Clerk of the U.S. Supreme Court is a defendant with a usual place of business at 1 First Street NE, Washington, D.C. 20543.

7.    Defendant, Jane Doe is a name unknown at this time, but is an Assistant Clerk of the U.S. Supreme Court with a usual place of business at 1 First Street NE, Washington, D.C. 20543. On or about April 23, 2003, defendant Doe wrongfully berated the Plaintiff.—That the Plaintiff had no right to file a motion to recuse Justice Breyer and abruptly hung up. A litigant has an absolute right to file and have docketed a motion pursuant to 28 USC §455 to recuse a jurist who had made an earlier adverse ruling in the

<div align="center">**2**</div>

litigant's earlier case, and is obligated under F.R.C.A. and chapter 20-20.08 of the

Administrative Office of United States Courts publication "A Guide to Judicial Policies

and Procedures" and the corresponding Supreme Court Rules[2]

8.    The United States of America is a defendant.

9.    The Office of the Clerk of the U.S. Supreme Court is a defendant.

<div align="center">JURISDICTION</div>

4.    This court has jurisdiction over actions claiming a deprivation of the plaintiff's

right to access the courts and to have all his motions docketed, and not removed, and

considered by the U.S. Supreme Court when considering his certorari petition under 28

U.S.C. §1331, §1343, §1361, §1442 and §1443.

5.    On August 1, 1984 and September 11, 1984 (Exhibit B) Justice Stephen Breyer,

then a First Circuit jurist, sat on a panel and rendered a ruling denying Vincent Zarrilli's

appeal of a District Court ruling in the Pot Shop Chapter 11 reorganization case. That

decision was then appealed to the U.S. Supreme Court, but certorari was denied No. 84-

6280.

6.    In 1992 the Plaintiff, Vincent Zarrilli filed a Chapter 13 bankruptcy proceeding in

the U.S. Bankruptcy Court of the District of Massachusetts, in re Zarrilli, No. 92-10033.

7.    As part of that proceeding, Zarrilli filed an adversary proceeding seeking a

declaration that the original 1972 issuance of The Pot Shop, Inc. stock paid The Pot

Shop's corporate debts in full and therefore left no personal debt or obligation owed on a

note guaranteed by Vincent Zarrilli and Mary Elise Zarrilli to Capitol Bank – and that

---

2 Plaintiff has exhausted all non discovery means of begetting the U.S. Supreme Court's publication of it's
rules for Clerks to no avail. The Clerks maintain that said rules are not public information. It is expected
that "discovery" will resolve the problem one way or the other.

<div align="center">**3**</div>

any State Court judgment based upon the Zarrilli guarantee and the notion that the stock did not pay the debt be ruled null and void, as Zarrilli could not owe a debt that the Bankruptcy Court contstructively ruled had been paid off by the issuance of The Pot Shop stock, and that Zarrilli owned the redemption rights on real estate in Sudbury, MA foreclosed by Capitol Bank to collect on the personal guarantee of the Zarrillis. If the corporate debt was paid in full, then Capitol Bank could not pursue or collect a State court judgment against the Zarrillis as guarantors of the note thereby voiding a State court judgment. That State court judgment paved the way for a March 22, 1976 foreclosure sale on the Zarrilli real estate in Sudbury, MA by Capitol Bank. Capital Bank had secretly filed a voidable 1971 agreement for judgment entered into before The Pot Shop, Inc's Chapter 11 reorganization was confirmed. No notice was given. No Judge was involved. Judgment issued by the Clerk based upon the 1971 agreement for judgment. That State court judgment had been superceded by the confirmed Chapter 11 reorganization.

8.       Circa. 1998, Zarrilli filed a motion to redeem the Sudbury, MA real estate in the adversary proceeding as well as other motions pertinent and material to the controversy as Zarrilli's redemption rights were an asset of his Chapter 13 reorganization bankruptcy. All Zarrilli's motions were denied by the Bankruptcy Court (J. Feeney) who ruled that the[1] redemption period had long passed[3]. Zarrilli appealed those bankruptcy court rulings.

---

3 Judge Feeney paid no attention to Zarrilli's argument and controlling precedent that Ayres v Waite 64 Mass 72 extended the time to redeem for 20 years if there was a defect in the conduct of the foreclosure sale. There existed such a defect in the Zarrilli foreclosure. In a related proceeding a Federal Court Judge found that there had been a violation of MGL 244 §14 – failure to advertise the foreclosure sale in a newspaper published in the town where the foreclosure sale was to take place.

**4**

9.    In 2001, the Bankruptcy Appellate Panel denied Zarrilli's appeal of the denial of

Zarrilli's motion to redeem and found that Judge Breyer's August 1, 1984 and September

11, 1984 decisions foreclosed considerations of Zarrilli's appeal on the merits.

10.    Zarrilli then appealed the Bankruptcy Appellate Panel's decision to the First

Circuit, but the Bankruptcy Appellate Panel beforehand had allowed his Motion to

Consolidate his motions to redeem the Sudbury real estate and the motion requesting The

Pot Shop Chapter 13 be designated as an adversary proceeding, thus all issues were in

only one case.

11.    On February 19, 2002, Zarrilli timely filed the certorari petition after an allowed

extension, for certorari to review the 2001 decision of the First Circuit and Bankruptcy

Appellate Panel.

12.    The Bankruptcy Appellate Panel cited Judge Breyer's 1984 rulings (Exhibit B) in

denying Zarrilli's appeal and decided that Judge Breyer's 1984 opinion was "res

judicita". Zarrilli argued that in order for res judicita to apply, the essential finding had to

be on the merits and without a court's explanation as to how a confirmed reorganization

plan which oversaw the actual distribution of Pot Shop, Inc's stock to all the 300 plus

creditors which also required expensive Mass. State House stock registration in

increasing the number of shares of Pot Shop stock so that the reorganization plan would

be viable, the Breyer court's decision was not on the merits and there was no res judicita.

13.    Zarrilli reiterated that in the absence of a decision dealing with the above stated

facts as well as a clear explanation as to why the docket of the original 1971 Pot Shop

Chapter 11 case contained no entry voiding the confirmed arrangement, which had to be

an absolute prerequisite to the Pot Shop's receiving its final decree circa October 1972.

Zarrilli argued that only a bankruptcy court order voiding the entire 1972 Pot Shop's final decree would render his personal obligation to Capitol Bank as being valid. An appeal was then taken to the United States Court of Appeals for the First Circuit, No. 00-0096. At that time, Judge Breyer was no longer a member of the First Circuit being appointed and confirmed to the United States Supreme Court.

14.    On June 28, 2000, the First Circuit affirmed the rulings of the Bankruptcy Appellate Panel. A copy of this decision appears as Exhibit C. No comment of any kind was made as to the 1984 Breyer Court's citing Exhibit D Union Carbide Corp. v Newboles 686 F.2d593 (1982) as a parallel for petitioner's liability on the guarantee. That case did not involve an accord and satisfaction of the entire corporate debt as was the case in The Pot Shop's reorganization. The Union Carbide decision was not in point. The Pot Shop case was wholly distinguishable. It is inexplicable as to why both the Bankruptcy Appellate Panel and First Circuit's were unwilling to rule that Judge Breyer's 1984 citation of Union Carbide v Newboles was totally inappropriate and completely non-related to The Pot Shop case.

15.    The Plaintiff timely sought reconsideration of the First Circuit's June 2001 decision affirming the Bankruptcy Appellate Panel. The reconsideration motion pointed out that the Bankruptcy Appellate Panel's decision was not on the merits, and was completely silent as to the stock issuance, thus rendering that BAP's decision non res judicita and voidable. The reconsideration motion did not meet with success. The First Circuit issued a per curiam order proclaiming (Exhibic C) that the Breyer 1984 decision was truly on the merits (despite its patent dissimulation with Union Carbide v Newboles

**6**

and silence as to the effect of the stock issuance which had to be approved by the majority of approximately 300 Pot Shop creditors and in fact was.

16.    In essence, the First Circuit said the Breyer 1984 decision was on the merits because we said it was on the merits.

17.    As part of certorari petition, Zarrilli moved to have Justice Breyer, now sitting as a Supreme Court Justice, recuse himself from consideration of Zarrilli's 2002 certorari petition as it was Justice Breyer's August 1, 1984 Order and September 11, 1984 Orders (Exhibits B) which was the true basis of the appeal.

18.    A Justice whose previous judicial decision is being appealed should not hear the petition for certorari, as required by 28U.S.C. §455 and 28 U.S.C. §47 as his or her impartiality is questionable.

19.    Zarrilli's separate motion to recuse Justice Breyer (Exhibit A) submitted in conjunction with his certorari petition, however, was not docketed when Zarrilli's petition was docketed as the motion to recuse is not noted on the Supreme Court docket sheet No. 01-8719-CFX, attached hereto (Exhibit I   . This recusal motion was placed at the very top of the entire batch of each of the 11 petitions so it would be the first item read. The actual certorari petition and appendices were banded and laid below that recusal motion. Exhibit E shows the affidavit of Vincent F. Zarrilli as to the foregoing.

20.    Supreme Court Clerks are under a mandatory, non-discretionary duty to docket all motions. The Clerk's known failure to docket the motion to recuse Justice Breyer deprived Zarrilli of his clearly established constitutional civil right of access to the courts and to the deprivation of his appellate rights without due process of law, guaranteed by the First, Fifth and Fourteenth Amendments.

**7**

21.    As a result of the Clerks knowing failure to docket Zarrilli's motion to recuse

Justice Breyer, Zarrilli's certorari was improperly denied and Zarrilli lost the right to

have his certrori petition heard only by impartial and bias free Justices who had no reason

to be disqualified as required by 28 U.S.C. §455.

22.    In late March 2003, almost one year since the certorari had been denied, Zarrilli

still bothered by said denial contacted the clerks office and requested a copy of the case

docket mainly to see if any comments appeared relative to the Breyer recusal. Zarrilli

then realized for the first time that the Docket Sheet was completely silent as to the

recusal motion. He then on April 4, 2003 (Exhibit F) sent three identical separate letters

to defendant clerks Suter, Vasil and Atkins and a copy to Justice Souter asking for any

written comments Justice Breyer might have noted as well as a confirmation that all nine

judges had, in fact, received the entire petition including the separate motion for recusal.

23.    On April 24, 2003 he phoned defendant Clerk Atkins (Exhibit E) and was told by

Atkins he would receive a written response to the issues he had raised in the April 4,

2003 letter which had been sent both by fax and first class mail. Defendant had

acknowledged in that conversation of April 24th that the faxed copy had arrived.

24.  Zarrilli never received anything from the clerks and on May 23, 2003 sent defendant

clerk Atkins a letter (Exhibit H) both by fax and first class mail advising Atkins that he

had received nothing and that the clerks were forcing him to seek a remedy.  Again, there

was no response.

25.  The preceding May 2002, Zarrilli had timely filed a motion for rehearing which was

distributed to all Justices on August 2, 2002 (See Docket Exhibit D).  Prior to a decision

having been rendered by the entire court as to that rehearing motion. Rule 22 of the Supreme Court Rules enabled him to write to Justice Souter who was the Justice for Zarrilli's circuit. He presented it as a supplement to his previously filed amendment to the motion for reconsideration. This motion inter alia (Exhibit I) raised the all important Breyer recusal issue with the expectation that Justice Souter would present it to the other eight justices when the rehearing motion was discussed.

26.     The end result of this last minute attempt to rescue the case 10 days before a decision was to issue was inexplicable then and through the very present. Although Zarrilli had send this package to the Supreme Court via United Parcel Post (UPS) (Exhibit L) no signed receipt could be produced as proof of its receipt by the U.S. Supreme Court. Somehow it was apparently lost and never read by Justice Souter (Exhibits J and K).

27.     Thus, a few days later on August 21, 2002, the rehearing motion was denied. The facts pertaining to the recusal motion were never before any of the Supreme Court Justices.

## PRAYERS

28.     WHEREFORE, Vincent Zarrilli respectfully prays this Court to:

1. Enter an Order that all mandates be recalled in U.S. Supreme Court 01-8719 and First Circuit 00-0096 and The Bankruptcy Appellate Panel No. MB99-022 and MB99-044.

2. Enter an Order requesting that Zarrilli's certorari petition be reinstated.

3. Enter an Order declaring that the named Clerks of U.S. Supreme Court wrongfully and unconstitutionally failed to record, or docket Zarrilli's motion to recuse Justice Breyer from considering Zarrilli's petition.

4. Enter such further relief as justice requires so to have Vincent F. Zarrilli have his day in Court and receive a sound principled ruling in the light of the fact that over 33 year-period of time Zarrilli has persevered to beget a sound principled opinion which has seen at least 24 both State and Federal Court Judges fail to issue a principled decision regarding the effect of the confirmation of The Pot Shop stock issuance, that this court recommend to the justices of the United States Supreme Court that it finally hear The Pot Shop case.

## DEMAND FOR JURY TRIAL

23.     The Petitioner, Vincent F. Zarrilli, pursuant to rule 38 FRCP requests a trial by jury of all factual issues.

Respectfully submitted,

The Petitioner pro se
Vincent F. Zarrilli
Box 101, Hanover Station
Boston, MA  02113
Phone:  617-523-9210/Fax:  617-523-6765

10

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

*Vincent F. Zarrilli*

FILED IN CLERKS OFFICE

DEFENDANTS

2005 MAR 16 P 2: 01

U.S. DISTRICT COURT
DISTRICT OF MASS.

**(b)** County of Residence of First Listed Plaintiff *Suffolk*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
*Vincent F. Zarrilli Boston Box 101 Hanover Station 02113*

Attorneys (If Known)

# 05 - 10501 RCL

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☒ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
*28 USC 1331, 1332, 1361, 1442*

Brief description of cause: *Negligence of Asst. Clerks of US Supreme*

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE *3/2/05*

SIGNATURE OF ATTORNEY OF RECORD *Vincent F. Zarrilli pro se*

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) *Vincent F Zarrilli plaintiff*
*1st Defendant is Office of the Clerk U.S.Ct*

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL
COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

FILED
IN CLERKS OFFICE

440

I.  160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

2005 MAR 16  P 2:01

II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases

U.S. DISTRICT COURT
DISTRICT OF MASS.

III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
380, 385, 450, 891.

IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
690, 810, 861-865, 870, 871, 875, 900.

V.  150, 152, 153.

# 05 - 10501 RCL

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE
HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
COURT?

YES    (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
PUBLIC INTEREST?  (SEE 28 USC §2403)

(YES)    NO

IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

(YES)    NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE
28 USC §2284?

YES    (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE
COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE
SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

(YES)    NO

A.  IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

(EASTERN DIVISION)    CENTRAL DIVISION    WESTERN DIVISION

B.  IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING
GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

EASTERN DIVISION    CENTRAL DIVISION    WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME *Vincent F Zarrilli, pro se*
ADDRESS *Box 101, Hanover Station, Boston MA 02113*
TELEPHONE NO. *617-523 9210, Fax 617 523 6765*

(Cover sheet local.wpd - 11/27/00)

EXHIBIT
A

NO _____

IN THE

SUPREME COURT OF THE UNITED STATES

TERM 2002

VINCENT F. ZARRILLI

V

FEDERAL DEPOSIT INSURANCE CORPORATION

## PETITIONER'S MOTION THAT JUDGE STEVEN BREYER

## RECUSE HIMSELF

The above captioned motion is made pursuant to 28USC455. Judge Breyer sitting

on the First Circuit was a member of the panel whose order is herein sought to be

overturned.

Respectfully submitted,

Vincent F. Zarrilli
Box 101, Hanover Station
Boston, MA  02113
Phone:  617-523-9210
Fax:  617-523-6765

Certificate of Service
I, Vincent F. Zarrilli, certify that I served a true
copy of the within to J. Tanker, Esq, FDIC,
801 17th St. NW, R-H 2012, Washington, DC  20434

$A2$

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 84-1007

VINCENT F. ZARRILLI,
Petitioner, Appellant,

v.

JOSEPH BRAUNSTEIN,
Respondent, Appellee.

Before
COFFIN, BOWNES AND BREYER,
Circuit Judges.

ORDER OF COURT

Entered:  August 1, 1984

The Pot Shop, Inc.'s discharge in bankruptcy did not extinguish appellant's personal liability as guarantor of The Pot Shop's promissory notes, and Capital Bank and Trust was not prevented from maintaining an action to enforce that liability. See Union Carbide Corp. v. Newboles, 686 F.2d 593 (7th Cir. 1982) (discharge of corporate debt did not affect guarantors' liability); 3 Collier on Bankruptcy 524-15 (15th ed. 1984) ("When it is necessary to commence or continue a suit against a debtor in order, for example, to establish liability of another, perhaps a surety, such suit would not be barred.").

Appellant has abused the post-judgment motion procedure by bringing repetitious motions to reopen. We see no abuse of discretion in the Bankruptcy Court's denial of appellant's motion.

Affirmed.

ORDER OF COURT

Entered September 11, 1984

Regardless of the merits of appellant's claim that e distribution of common stock not merely discharged The Pot Shop's debts but satisfied them in full, the state court judgment is not void. Neither 11 USC § 524 nor its predecessor applied to the bank's action seeking to collect on the guarantee. Appellant may not now collaterally attack the state court judgment.

The motion for reconsideration is denied.

*A 3*

By the Court,

**Per Curiam**. In this appeal, pro se appellant Vincent Zarrilli appeals from a decision by the Bankruptcy Appellate Panel ("BAP") affirming the bankruptcy court's denial of certain motions he filed in two bankruptcy proceedings. In its decision, the BAP concluded that the doctrine of res judicata barred Zarrilli's claims. We affirm, essentially for the reasons given by the BAP in its decision dated April 19, 2000.

In the present appeal, Zarrilli disputes the BAP's ruling in only one pertinent respect. He suggests that rulings by this court in a prior appeal were not decisions "on the merits" for res judicata purposes because the rulings failed to adequately explain the court's adverse decision. We find this claim meritless. The rulings in question did explain the decision reached by the court, and, in any event, a court's failure to explain a decision does not mean that the decision is not "on the merits." See C. Wright, A. Miller & E. Cooper, 18 Fed. Prac & Proc. § 4435, at 348 (2001 Supp.) ("Finally, it should be clear that a decision may be 'on the merits' even though it is reached without opinion or other explanation.") (citations omitted).

Affirmed.



A4



Exhibit D
The Classy Lawyer • Box 101-Hanover Station, Boston, Mass. 02113

1112, 1118 (5th Cir. 1981). Accordingly, it has been held that provisions for seniority rights "designed or operated to discriminate on an illegal basis is not a 'bona fide' system." *Acha v. Beame*, 570 F.2d 57, 64 (2nd Cir. 1978); and see *United Airlines, Inc. v. Evans*, 431 U.S. 553, 559, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

[3] Section 703(c)(1) of Title VII, 42 U.S.C. § 2000e-2(c)(1), provides that:

> It shall be an unlawful employment practice for a labor organization—
>
> to exclude . . . from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin; . . .

Thus, it is clearly a violation of this section for a union, international or local, to maintain a seniority system for the purpose of excluding Negroes from membership because of their race; and certainly, such a system is not protected by the exception in section 703(f) of Title VII. *Hameed v. Intern. Ass'n of Bridge, etc.*, 637 F.2d 506 (8th Cir. 1980); *Glus v. G. C. Murphy Co.*, 629 F.2d 248 (3rd Cir. 1980); *Freeman v. Motor Convoy, Inc.*, 409 F.Supp. 1100 (N.D.Ga. 1975); *United States by Clark v. United Papermakers & Paperworkers*, 282 F.Supp. 39 (E.D.La.1968). Therefore, after findings that the Blacksmiths negotiated and maintained their seniority system for the illegal purpose, and with the intent and effect, of discriminating against Negroes because of their race, the district court could only conclude that the system is not bona fide within the meaning of section 703(h) of Title VII. *International Bro. of Teamsters v. United States*, 431 U.S. 324, 346, 97 S.Ct. 1843, 1860, 52 L.Ed.2d 396 (1977); *Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 454 F.Supp. 158, 179 (D.Kan.1978); *rev'd on other grounds*, 645 F.2d 1365 (10th Cir. 1981). For these reasons, the judgment of the district court is affirmed.

---

UNION CARBIDE CORPORATION, Plaintiff-Appellee,

v.

F. Allen NEWBOLES and Mary V. Newboles, Defendants-Appellants.

No. 81-2851.

United States Court of Appeals, Seventh Circuit.

Submitted May 3, 1982.*

Decided Aug. 16, 1982.

Guarantors of bankrupt debtor appealed from judgment of the United States District Court for the Southern District of Indiana, Evansville Division, Gene E. Brooks, J., granting summary judgment in favor of creditor. The Court of Appeals, held that: (1) creditor's approval of debtor's Chapter 11 plan of arrangement did not operate to discharge guarantors even though proposed plan purported to discharge claims against guarantors, and (2) creditor's receipt of discharged payment of $14,337.01 did not estop it to collect rest of debt from guarantors.

Affirmed.

**1. Bankruptcy** ⇐**428**

Section of Bankruptcy Act governing codebtors, guarantors and sureties for bankrupts provides the discharge of debtor itself has no effect upon liability of cosigners on note. Bankr.Act, § 16, 11 U.S.C. (1976 Ed.) § 34.

**2. Bankruptcy** ⇐**691**

Creditor's approval of bankruptcy plan does not discharge bankrupt's guarantors.

**3. Bankruptcy** ⇐**404(1)**

Bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of creditors.

* On April 28, 1982, we granted appellants' motion to consider the case on the basis of the briefs and record alone.

A5

**4. Bankruptcy ⟺647, 691**

Majority of creditors must approve of debtor's plan for debtor to be discharged, so that in many instances one creditor's approval or disapproval will have no effect even in bankruptcy proceeding; thus, where single creditor's vote is determinative, imputing extra-bankruptcy significance to it, to effect that acceptance of plan discharges bankrupt's codebtors, violates specific command of section of Bankruptcy Act that provides liability of guarantor shall not be altered by discharge of bankrupt. Bankr.Act, § 16, 11 U.S.C. (1976 Ed.) § 34.

**5. Bankruptcy ⟺428, 691**

Import of section of Bankruptcy Act governing codebtors, guarantors or suretors for bankrupt is that mechanics of administering federal bankruptcy laws, no matter how suggestive, do not operate as private contract to relieve codebtors of bankrupt of their liability; thus, even though debtor's Chapter 11 plan expressly purported to discharge guarantors of bankrupt, guarantors were not discharged. Bankr.Act, §§ 16, 301 et seq., 11 U.S.C. (1976 Ed.) §§ 34, 701 et seq.

**6. Bankruptcy ⟺428**

Payment which effects discharge is not consideration for any promise of creditors, much less for one to release nonparty obligors; thus, creditor's receipt of discharge payment of $14,337.01 did not estop it to collect rest of debt from guarantors of debtor.

---

F. Wesley Bowers, Evansville, Ind., for defendants-appellants.

Stephen W. Terry Jr., Baker & Daniels, Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and TEMPLAR,** Senior District Judge.

** The Honorable George Templar, Senior District Judge of the United States District Court

**PER CURIAM.**

Union Carbide Corporation loaned some $225,000 to New-Kro Oil Company. New-Kro gave Union Carbide a promissory note in return for the loan, and the President of New-Kro and his wife, F. Allen and Mary V. Newboles, personally guaranteed New-Kro's repayment of the loan. When New-Kro defaulted on its repayment of the loan, Union Carbide brought this diversity action against Mr. and Mrs. Newboles and New-Kro on October 31, 1978 in an attempt to recover the approximately $70,000 still owing on the note. On November 8, 1978, New-Kro petitioned for relief under Chapter XI of the Bankruptcy Act of 1898. New-Kro filed an amended proposed plan of arrangement for settlement of its unsecured debt on September 14, 1979. The plan allowed a twenty percent return on unsecured claims, and contained the following provision:

*Impact of Arrangement on Guaranty Holders*

Acceptance and confirmation of this Arrangement shall constitute a full settlement, satisfaction and discharge of all claims, demands, actions, causes of action or otherwise against not only the Debtor, but also against any other persons or entities who have entered into guaranty or indemnity agreements with unsecured creditors or who have endorsed commercial paper for the benefit of the Debtor. It is the intent of this Arrangement that upon its acceptance and confirmation, any creditors asserting claims arising out of agreements against persons or entities other than the Debtor by reason of indebtedness of the Debtor, shall be required to look solely to the Debtor for payment of such indebtedness under the terms of this Arrangement.

The plan was approved by a majority of the creditors, including Union Carbide, and was confirmed by the bankruptcy court. Pursuant to the plan New-Kro paid Union Carbide $14,337.01, leaving $55,715.90 un-

for the District of Kansas, is sitting by designation.



## UNION CARBIDE CORP. v. NEWBOLES
Cite as 686 F.2d 593 (1982)

paid principal on the note. The district court then granted summary judgment for Union Carbide against Mr. and Mrs. Newboles in the amount of the unpaid principal plus interest of $3,734.98, and Mr. and Mrs. Newboles appeal.

[1, 2] On appeal, Mr. and Mrs. Newboles argue that their liability as guarantors on the note was erased by Union Carbide's approval of the bankruptcy plan. In particular, Mr. and Mrs. Newboles argue that Union Carbide's approval of the above-quoted provision in the plan and acceptance of New-Kro's discharge payment worked an accord and satisfaction under Indiana law, which the district court must respect when sitting in diversity. But Section 16 of the Bankruptcy Act of 1898, 11 U.S.C. § 34 (repealed effective October 1, 1979), is to the contrary. Section 16 provides that "[t]he liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." [1] Section 16 makes clear that the discharge of New-Kro itself had no effect upon the liability of Mr. and Mrs. Newboles on the note, and indeed we have held that the bankruptcy court has no power to discharge the liabilities of a bankrupt's guarantor. *In re Diversey Building Corp.*, 86 F.2d 456, 458 (7th Cir. 1936), certiorari denied, 300 U.S. 662, 57 S.Ct. 492, 81 L.Ed. 870. We hold that a creditor's approval of the bankruptcy plan does not discharge the bankrupt's guarantors either.

[3–5] A bankruptcy discharge arises by operation of federal bankruptcy law, not by contractual consent of the creditors. *In re Kornbluth*, 65 F.2d 400, 402 (2d Cir. 1933). A creditor's approval of the plan cannot be deemed an act of assent having significance beyond the confines of the bankruptcy proceedings, simply because the gamesmanship imported from state contract law into the bankruptcy proceedings would be intolerable. Since a majority of the creditors must approve the debtor's plan for the debtor to

be discharged, in many instances one creditor's approval or disapproval will have no effect even in the bankruptcy proceeding. In the case that a single creditor's vote is determinative, imputing extra-bankruptcy significance to it for that reason violates the specific command of Section 16 that "[t]he liability of a * * * guarantor * * * shall not be altered by the discharge of [the] bankrupt." This case is no different because the plan expressly purports to discharge guarantors of the bankrupt. The import of Section 16 is that the mechanics of administering the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract to relieve co-debtors of the bankrupt of their liabilities. See *R. I. D. C. Industrial Development Fund v. Snyder*, 539 F.2d 487, 490 n. 3 (5th Cir. 1976) (creditor's approval of Chapter XI bankruptcy arrangement that purported to eliminate the underlying debt did not prevent the creditor from having recourse against the guarantor), certiorari denied, 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542; *United States v. George A. Fuller Co.*, 250 F.Supp. 649, 656, 658 (D.Mont.1966).

[6] Similarly, the payment which effects a discharge is not consideration for any promise by the creditors, much less for one to release non-party obligors. *In re Kornbluth*, 65 F.2d 400, 402–403 (2d Cir. 1933); *Post v. Losey*, 111 Ind. 74, 12 N.E. 121 (1887). Thus Union Carbide's receipt of the discharge payment of $14,337.01 does not estop it to collect the rest of the debt from Mr. and Mrs. Newboles.

Therefore we affirm the order of the district court granting summary judgment for Union Carbide.



---

1. Section 16 was rewritten and reenacted in the Bankruptcy Reform Act of 1978 at 11 U.S.C.

§ 524(e).

*A 8*

UNITED STATES DISTRICT COURT

**Exhibit E**

VINCENT F. ZARRILLI

        vs.

NO.

Clerk's Office of U.S. S.Ct, et al.

## AFFIDAVIT OF VINCENT F. ZARRILLI

I, Vincent F. Zarrilli, on oath depose as follows:

1. On April 4, 2003, I sent a letter by first-class mail and one copy by fax to the S.Ct. Clerk's Office, herein shown (Exhibit F) to each of the following persons:

        Jeffrey Atkins

        Christopher Vasil

        William Suter

2. On April 24, 2003, I spoke with Clerk Atkins who told me that I would receive a written reply to the issues I raised in the letter of April 4, 2003.

3. I have never to date ever received the written response.

4. On May 23, 2003, I sent the letter to Clerk Atkins herein shown as Exhibit H. The letter advised Clerk Atkins that his promised written reply to my letter of April 4, 2003 was never received.

5. On August 16, 2002, I sent three notices to Justice Souter herein shown as Exhibit I via United Parcel Service three-day select service bringing the recusal motion before him in an effort to avoid the pending reconsideration motion from being dismissed at a conference I learned was taking place at the end of August 2002. At that time I was still unaware that my recusal motion had not been docketed or distributed.

6. I never heard of any action by Justice Souter and contacted the United Parcel Service to request a copy or a signed receipt for the delivery. I was stunned to learn that UPS could not produce any proof of delivery and sent me loss notification forms (Exhibits J and K).

7. On August 26, 2002, the rehearing motion was denied.

8. In late February 2003, I phoned a Clerk Atkins and for the first time requested a copy of the case docket. Clerk Atkins appeared to be very tense.

9. I then received a copy of the docket by fax and in early March 2003 by first-class mail (Exhibit 1).

10. When examining the docket and not finding an entry of the recusal motion I learned for the first time that something, which appeared to be a gross irregularity had taken place.

11. During the ensuing three months my phone calls to Clerks Atkins, Vasil and Suter and Jane Doe brought no results despite the promise of a written explanation by Clerk Atkins of April 24, 2003. My ensuing phone calls were switched to other clerks who offered nothing meaningful. One phone call was switched from Clerk Vasil to Clerk Jane Doe who shouted, "I had no right to file the recusal motion and abruptly hung up.

Signed under the penalties of perjury,

Vincent F. Zarrilli        3/11/05

VINCENT F. ZARRILLI
BOX 101, HANOVER STATION
BOSTON, MA  02113
PHONE: 617-523-9210/FAX:  617-523-6765

**EXHIBIT F**

April 4, 2003

William K. Suter, Chief Clerk, United States Supreme Court
Jeff Atkins, Assistant Clerk, United States Supreme Court
Christopher Vasil, Assistant Clerk, United States Supreme Court
1 First Street NE
Washington, DC  20543

Dear William Suter, Christopher Vasil and Jeff Atkins;

On February 19, 2002, your office timely received my "Petition for Centorari" which involved the petition itself and a fairly sizeable set of appendices labeled A, B, C, D for each petition.

On the very <u>top</u> of the package, which had a large strong rubber band around each of the eleven sets was a separate motion for recusal for Judge Breyer. (Exhibit A attached)

Both the petition and a subsequent motion for reconsideration were denied.

Although the reconsideration motion made reference to the recusal motion, it did <u>not</u> raise it as an issue since at that time, I did <u>not</u> have a copy of the S.CT docket, which I recently requested and received from you.  (Exhibit B)

After examining the docket I realized for the <u>first</u> time that the motion for recusal had <u>not</u> been docketed.

At this point I would very much appreciate your written confirmation of the motion not being docketed as well as a copy of Judge Breyer's action on that motion which is usually a handwritten notation on the motion itself bearing Judge Breyer's signature.  If it's possible to receive that material by both return fax and letter, it would be most appreciated.

Additionally, would you kindly confirm that all nine Judges <u>received</u> the entire petition with the motion for recusal as described above.

If there is a question as to your obligation to send me these documents, please consider this request as being submitted under 5USC552, the U.S. Freedom of Information statute.

Very truly yours,

cc: Justice David H. Souter

Vincent F. Zarrilli



*EXHIBIT G*

VINCENT F. ZARRILLI
BOX 101, HANOVER STATION
BOSTON, MA  02113
PHONE: 617-523-9210
FAX:  617-523-6765

April 25 2003

(By fax and 1st Class Mail)

Jeffrey D. Atkins, Assistant Clerk
U.S. Supreme Court
Office of the Clerk
1 First St, N.E.
Washington, DC  20543

Dear Jeffrey Atkins;

     As a memorandum of our phone conversation of yesterday, it is my understanding that the four letters I mailed on April 4th to both you and Messrs. Vasil and Suter with a copy to Justice Souter still have not arrived as a result of the new 9/11/01 security measures.

     It was also my understanding that when they do arrive, I will receive a written response addressing the issues I raised in that letter.

     Many thanks for your continued cooperation.

Cordially,

Vincent F. Zarrilli

cc:  Justice Souter

---

| U.S. POSTAL SERVICE | **CERTIFICATE OF MAILING** |
|---|---|
| MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT PROVIDE FOR INSURANCE-POSTMASTER | |

Received From: *V. Zarrilli*
*BOX 101, 02113*

One piece of ordinary mail addressed to:
*U.S. Supreme C[ ]*
*1 First St NE*
*Washington, D.C.*
*Jeffrey Atkins  20543*

PS Form **3817**, January 2001

U.S. POSTAGE
CHARLESTOWN, MA
APR 25 '03
AMOUNT
$0.60

A13




VINCENT F. ZARRILLI
BOX 101, HANOVER STATION
BOSTON, MA 02113
PHONE: 617-523-9210
FAX: 617-523-6765

May 23, 2003

John Atkins, Assistant Clerk
U.S. Supreme Court                          re: NO-01-8719 CF
1 First Street, NE
Washington, DC 20543                        by fax and 1st Class Mail

Dear Mr. Atkins;

   In our phone conversation of April 24th past, you indicated that I would receive a
response to the issues raised in my letter to your, Mr. Suter and Mr. Vasel of April 4th.

   Since I received nothing from you as to the above date, you will have forced me
to seek alternate remedies as I cannot believe that mail to the U.S. Supreme Court can be
delayed for approximately seven weeks.

                                        Cordially,

                                        Vincent F. Zarrilli

---

CERTIFICATE OF MAILING
DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
~~CE-POSTMASTER~~

Affix fee here in stamps

_cent F Zarrilly_
_X 101, Hanover STA_
_Bo stn, MA 02113_

One piece of ordinary mail addressed to:
_Jo H ATKIAS, clerk_
_U. S Supreme Court_
_1 First ST NE_
_Washynn, D.C 20543_

Form 3817, January 2001

U.S. POSTAGE
PAID
CHARLESTOWN MA
02129
MAY 24 03
AMOUNT
$0.90
0002074-50

UNITED STATES
POSTAL SERVICE
9999

A-14

EXHIBIT
I

Vincent F. Zarrilli
Box 101, Hanover Station
Boston, MA  02113
Phone:  617-523-9210
Fax:  617-523-6765

August 16, 2002

The Honorable Justice David Souter
U.S. Supreme Court
1 First Street, N.E.                              re:  Case No. 01-8719
Washington, DC  20543

Dear Justice Souter;

     It is my belief that a premature procedural dismissal could take place in this case

forthwith without a diligent evaluation of the issues I now raise in the accompanying

supplement to the previously filed amended motion for reconsideration.

     I would very much appreciate your staying any dismissal action until such time as

you have had the time to fully consider the above mentioned motion and the other papers

filed in this 30-year old case.

Respectfully submitted

Vincent F. Zarrilli
Box 101, Hanover Station
Boston, MA  02113
Phone:  617-523-9210
Fax:  617-523-6765

Certificate of Service
I, Vincent F. Zarrilli, certify that I served a true copy
of the within to J. Tanker, esq. FDIC, 801 17th St, NW,
Washington, DC  20434, R-H 2012 by 1st class mail on 8/16/02.  VFZ

A 15

NO_____

IN THE

SUPREME COURT OF THE UNITED STATES

TERM 2002

VINCENT F. ZARRILLI

V

FEDERAL DEPOSIT INSURANCE CORPORATION

PETITIONER'S MOTION THAT JUDGE STEVEN BREYER

RECUSE HIMSELF

The above captioned motion is made pursuant to 28USC455. Judge Breyer sitting on the First Circuit was a member of the panel whose order is herein sought to be overturned.

Respectfully submitted,

_____

Vincent F. Zarrilli
Box 101, Hanover Station
Boston, MA 02113
Phone: 617-523-9210
Fax: 617-523-6765

Certificate of Service
I, Vincent F. Zarrilli, certify that I served a true copy of the within to J. Tanker, Esq, FDIC, 801 17th St. NW, R-H 2012, Washington, DC 20434

_____

*[handwritten, right margin:] EXHIBIT A attached to letter to Justice Souter of 8/16/02*

A 15.1

**VINCENT F. ZARRILLI**
**BOX 101, HANOVER STATION**
**BOSTON, MA  02113**
**PHONE: 617-523-9210**
**FAX: 617-523-6765**

Clent- U.S Supreme Court                    August 16, 2000
1 First St    NE
Washington, D.C.  20547                     Case No 01-8719

DEAR CLERT

Enclosed please find

(1)  my motion to supplement my
grevious amended motion for Attendant,
this emberes 8 pgs including no
Attorney

(2)  my Application to Judge David Souter
[illegible] forward to Yolretion
to him as soon as possible

(3)  Would you kindly send me
a copy of the docket sheet
After the above entries are made
if there is a cost involved please
notify me by phone or FAX

SUPREME COURT OF THE UNITED STATES
WASHINGTON, D.C.

VINCENT F. ZARRILLI

Case No. 01-8719

v

FEDERAL DEPOSIT INSURANCE CORPORATION, et al

APPELLANT'S SUPPLEMENT TO HIS AMENDED MOTION FOR

RECONSIDERATION

The Appellant, Vincent F. Zarrilli, now offers assistance to the court in procedural issues

which might result in an erroneous dismissal of his just case.

ISSUE NO. 1

Given the fact that Justice Stephen Breyer did not participate in any of the judicial

lower levels of the instant case. It does not follow that the failure to recuse himself

renders the case ripe for despositive court actions as petitioners threshold motion (Exhibit

A) that Judge Breyer recuse himself requires proper action before the case could be

considered by theother justices.

1. Petitioner submits that Judge Breyer should have immediately recused himself

upon receiving the motion for recusal and certiorari petition, which was timely filed in

February 2002. The motion for recusal was on a separate paper atop the certiorari

petition but not stapled to the petition. This was done precisely so that it would be

perceived as a separate entity entitled to its own entry upon the case docket requiring

preliminary action by Justice Breyer.

2. Petitioner never received notice of Judge Breyer's action on the motion and

after receiving notice of the case's dismissal addressed the recusal issue in his amended

1

A15.3

rehearing motion but then on August 14th, 2002, upon contacting the clerk's office to learn the case status learned that a dismissal was possible because Judge Breyer was not a participant in the three lower courts proceedings, which gave rise to the instant certiorari petition which were as follows:

    1. 1998 U.S. Bankruptcy Court, Boston

    2. 1989-2000 U.S. Bankruptcy Appellate Court, Boston

    3. 2001 First Circuit Court, Boston

    3. Petitioner submits that the Justice Breyer's 1984 opinion as a member of the First Circuit Panel (Exhibit B) is the true instant matter or issue in controversy and constuctively places Justice Breyer among the above mentioned lower courts as his 1984 ruling (Exhibit B) was raised in each tier of the proceedings, which led to the present certiorari petition. It was never squarely addressed on the merits by any court.

    4. Justice Breyer's, First Circuit 1984 order, <u>erroneously</u> said The Pot Shop's issuance of stock did <u>not</u> pay The Pot Shop corporate debt. Argument that the stock issuance did in fact pay the debt in full was presented to all three lower courts as follows:

    a. The Bankruptcy Court avoided ruling on the issue at all.

    b. The Bankruptcy Appellate Court ruled only that the Breyer 1984 decision was res judicata and thereby prevented that court from reviewing the issue.

    c. The First Circuit affirmed the Bankruptcy court's decision thereby immunizing it's own 1984 erroneous ruling.

    d. The net result was that the 1984 Breyer decision simply escaped review

2

A 15.4

to the on going harm of the petitioner. Despite the fact that he raised the issue to the Bankruptcy Appellate Court that res judicata did not apply on his case since the original 1984 Breyer decision was clearly on its face (Exhibit B) "Not on the Merits" and res judicata only has application to cases heard "on the merits."

e.  The petitioner's net result to date has been that the U.S. Courts whose purpose is to vindicate any wrongful invasion of a person's rights has never taken place and for this court now to consider dismissal because Judge Breyer was not a participant in the above mentioned appellate court is just plan inconsistent with the concept of democracy.

## ISSUE NO. 2

## UNITED STATES SUPREME COURT JUSTICES RECUSALS GENERALLY

1.  The Federal Disqualification Statute 28 US 455 (b) (3) requires disqualification if a judge has participated in the particular case before him. Public Utility Commission v Pollack 343 US 451 (1982) which Justice Felix Frankfurter's classic determination that he could not participate in a case considering a challenge to the playing of music on city busses in the District of Columbia illustrated the importance of the goal of impartiality. As a frequent rider on the public transit system, Justice Frankfurter detested the music and his belief that he could not judge the case objectively such that he recused himself certainly sets substantial precedential standard for all Supreme Court Justices. It follows that since he recused himself in this music situation, he would certainly do so if called upon to sit in a current case in which he had previously issued a ruling.

2.  These arguments assume that Judge Breyer was in fact presented with the motion for

3

A 15.5

recusal since petitioner has not received notice of any action on the motion in five months, it is possible that an administrative error could have taken place and Justice Breyer <u>never</u> received the recusal motion.  Petitioner has hereto attached an affidavit swearing as to his including the recusal motion as a separate document with the original petition.  If Justice Breyer did not receive the recusal motion, he still should have recused himself on his own motion as per the Frankfurter precedent .

   3.  Additionally, Justice Breyer's general respect for 28 USC 455, the U.S. Judicial disqualification statute, was heightened by the Lloyds of London situation.  See <u>Lyle Denniston, Baltimore Sun,</u> July 15, 1994 "Under Fire, Breyer Offers Plan to Avoid Ethics Problems as Justice" and Monroe Fredman, NY times Nov 9, 1994 at A26 "Justice Breyer Takes Ethics Seriously."

   4.  Robert Bork promised that, if confirmed, he would not sit in cases involving his own prior decisions.  Nomination of Robert H. Bork to be associate Justice of the Supreme Court of the United States:  Hearing Before the Senate Comm. On the Judiciary, 100th Cong. 1st Sess, pt 1, at 416 (1987).  Justice Scalia indicated that he would not sit in a case similar to one in which he was previously involved.  Nomination of Judge Antonin Scalia:  Hearings Before the Senate Comm. On the Judiciary, 99th Cong., 2nd Sess. 71-73 (1986).  Justice Kennedy stated that a judge must recuse himself if his impartiality reasonably can be questioned.  Nomination of Anthony M. Kennedy to be Associate Justice of the Supreme Court of the United States:  Hearings Before the Senate Comm. On the Judiciary, 100th Cong., 1st Sess. 217 (1987).

<div align="center">4</div>

<div align="center">A 15.6</div>

5. Additionally of some value is 29 USCA disqualifying a judge of the U.S. Court of Appeals from a decision on issues tried by him. The foregoing offers a preponderance of legalisms mandating the recusal of Justice Stephen Breyer.

<u>CONCLUSION</u>

For all the foregoing, petitioner submits that if a decision adverse for him has been reached involving any of the foregoing issues, it should be retroactively voided as the court was not properly convened to move forward on the case. If a decision has not been reached, action on the recusal motion (i.e., it's allowance) is a mandatory prerequisite before the case can move forward.

Beyond everything it should be remembered the petitioner is 70 years old and has persisted for 30 years to beget a principled decision on the merits and has laid this responsibility request before approximately 30 Judges to no avail. Its time for the court of last resort to act.

The Petitioner pro se

Vincent F. Zarrilli
Box 101, Hanover Station
Boston, MA 02113
Phone: 617-523-9210
Fax: 617-523-6765

<u>Certificate of Service</u>
I, Vincent F. Zarrilli, certify that I served a true copy
of the within to J. Tanker, esq. FDIC, 801 17th St, NW,
Washington, DC 20434, R-H 2012 by 1st class mail on 8/16/02. VFZ

5

A15.7

NO_____

IN THE

SUPREME COURT OF THE UNITED STATES

TERM 2002

VINCENT F. ZARRILLI

V

FEDERAL DEPOSIT INSURANCE CORPORATION

## PETITIONER'S MOTION THAT JUDGE STEVEN BREYER

## RECUSE HIMSELF

The above captioned motion is made pursuant to 28USC455. Judge Breyer sitting on the First Circuit was a member of the panel whose order is herein sought to be overturned.

Respectfully submitted,

Vincent F. Zarrilli
Box 101, Hanover Station
Boston, MA 02113
Phone: 617-523-9210
Fax: 617-523-6765

Certificate of Service
I, Vincent F. Zarrilli, certify that I served a true copy of the within to J. Tanker, Esq, FDIC, 801 17th St., NW, R-H 2012, Washington, DC 20434

EXHIBIT D

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 84-1007

VINCENT F. ZARRILLI,
Petitioner, Appellant,

v.

JOSEPH BRAUNSTEIN,
Respondent, Appellee.

Before
COFFIN, BOWNES, AND BREYER
Circuit Judges.

ORDER OF COURT

Entered September 11, 1984

Regardless of the merits of appellant's claim that
the distribution of common stock not merely discharged The Pot
Shop's debts but satisfied them in full, the state court judgment
is not void. Neither 11 USC § 524 nor its predecessor applied
to the bank's action seeking to collect on the guarantee.
Appellant may not now collaterally attack the state court
judgment.

The m̶ ̶n for reconsideration is denied.

By the Court,

Francis P. Scigliano

Clerk.

the First 4 words or the 1984
Breyer court order "regardless or the merit
make it Abundantly clean that
the merits were never considered

A15.9

SUPREME COURT OF THE UNITED STATES

WASHINGTON, D.C.

VINCENT F. ZARRILLI

V                                              CASE NO. 01-8719

FEDERAL DEPOSIT INSURANCE CORPORATION

AFFIDAVIT OF VINCENT F. ZARRILLI

I, Vincent F. Zarrilli, on oath depose as follows:

1. I included a separate document entitled Motion for Recusal (Exhibit A) with each of the 10 certiorari petitions of February 2002.

2. Each motion was on top of the certiorari petition but not attached by staple to the certiorari petition.

3. I have not as of 8/16/02 received notice of Justice Breyer's action on the recusal notice and as recently as August 14, 2002 confirmed this telefonically to the clerk's office.

Signed under pains of perjury

Vincent F. Zarrilli

8/16/02

A15.10

# SUPREME COURT OF THE UNITED STATES
## WASHINGTON, D.C.

Vincent F. Zarrilli )

v. )                              Case No. 01-8719

)

Federal Deposit Insurance Corp. )

)

## Appellant's Motion for Reconsideration

The Appellant, Vincent F. Zarrilli, requests that the Honorable Court reconsider its denial of his petition for a writ of certiorari for the following reasons:

1.      Upon receiving this court's notice of the above mentioned denial of April 15, 2002, Petitioner contacted the clerk's office and asked how many judges participated in the denial decision. The clerk's response was that all the Supreme Court judges did, in fact, participate.

2.      Plaintiff assumed that the clerk meant that eight of the Court's nine judges took part as Appellant had previously filed a Motion (AP ____ ) re------ ....... of Judge Breyer as he was on the panel whose 1984 egregiously wron rise to this instant petition for certiorari.

3.      Appellant could not believe and does not now believe sitting United States Supreme Court Justices could scan his petition a Judge Breyer et al of the First Circuit were simply dead wrong in 198 the Appellant was in order as a matter of true justice.

4.      Assuming that the above (#3) is correct and that Appel petition passed the initial impediment, to wit, "the likelihood of succe question becomes why was the case not heard.

5.      The only rational answer might be that this court does capacity to hear all the properly presented cases, which come before i



A 15. 11





U.S. POSTAGE
PAID
BOSTON, MA
02113
MAY 10. '02
AMOUNT



United Parcel Service

September 4, 2002
Shipper 012105
Page 2 of 3



ATTN : VINCENT ZARRILLI
PHONE : (617) 523-9210

## DAMAGE/LOSS NOTIFICATION

INQUIRY FROM:       VINCENT ZARRILLI        **FAX RESPONSE**
                    NANCY SALES CO
                    22 WILLOW ST
                    CHELSEA  MA 02150-0000

SHIPMENT TO:        JAMES WOOD
                    U.S. SUPREME COURT
                    1 FIRST STREET N.E.
                    WASHINGTON DC 205430000

Shipper Number............................012105
Number of Parcels......................1
Shipper Invoice Number.............20543
Tracking Identification Number...1Z0121050100001887
Merchandise................................ LEGAL DOCUMENTS -

Pickup Date.................................08/16/02
Weight.........................................001
Shipper Reference Number.........N
Consignee P.O. Number............N

WE HAVE BEEN UNABLE TO LOCATE A RECORD OF DELIVERY OR RETURN FOR THE ABOVE
SHIPMENT. WE APOLOGIZE FOR THE INCONVENIENCE THIS CAUSES.

A 16





September 4, 2002
Shipper 012105
Page 3 of 3



## FAX COVER PAGE          1-888-458-7703

## REQUEST FOR CLAIM PAYMENT

Please complete this form, using black ink only, to help expedite your claim. Include the lesser of your **actual** cost of the merchandise, **replacement** cost or **repair** cost if repairable. Specify which cost you are including. Include your transportation charges. The preceding letter includes instructions on filing a claim and a **toll free fax number for your convenience 24 hours a day**. For future reference, this claim is identified by **Shipper Number 012105**, and **Claim Number 80347059**.

**SHIPMENT TO:**   JAMES WOOD
**U.S. SUPREME COURT**
**1 FIRST STREET N.E.**
**WASHINGTON DC 205430000**

| | |
|---|---|
| Shipper Number............................012105 | Pickup Date.......................................08/16/02 |
| Number of Parcels.........................1 | Weight................. ................001 |
| Shipper Invoice Number.............20543 | Shipper Reference Number.........N |
| Tracking Identification Number...1Z0121050100001887 | Consignee P.O. Number.............N |
| Merchandise..................... LEGAL DOCUMENTS - | |

Could this merchandise be replaced for your customer?        Yes __ No __
If damaged, is the merchandise repairable?                          Yes __ No __
If damaged, UPS may issue a Recovery Call Tag to take possession of the merchandise.

| Quantity | Merchandise Description | Specify Dollar Amount and Indicate Whether Actual, Replacement or Repair Cost |
|---|---|---|
| | | |
| | | |
| | | |
| | Transportation Charges: | |
| | Total Amount Requested: | |

Please provide a contact name and telephone number in the event further communication is necessary.
CONTACT NAME:                                        PHONE:
Please provide any additional Tracking Number(s) for the above shipment:
Tracking
Number(s):

In order to expedite your claim payment request: please FAX this completed barcoded Request for Claim Payment form as your COVER PAGE, along with the original invoice and a copy of your shipment record to:    1-888-458-7703
Or, mail it to:

**Claims Processing Center (BOS)**
**P.O. BOX 1265**
**Newport News VA 23601-1265**

**AABGK1AU01**



USSCT 8/16/02

I own this [ER] EX L
This Day
que 3 So 100T

## SUPREME COURT OF THE UNITED STATES

### WASHINGTON, D.C.

VINCENT F. ZARRILLI

V

FEDERAL DEPOSIT INSURANCE CORPORATION

CASE NO. 01-8719

Invoice: 20543
Customer: 20543
Dept:

Track: 1Z01210501000001007
Mode: UPS Next Day Air
Date: 08/16/2002
Weight:      2.00  Shipping:    22.75
COD:         0.00  Special:      0.00
DV:          0.00  Handling:     3.50
                   Total:       26.25

UPS Receipt

### AFFIDAVIT OF VINCENT F. ZARRILLI

I, Vincent F. Zarrilli, on oath depose as follows:

    1.  I included a separate document entitled Motion for Recusal (Exhibit A) with each of the 10 certiorari petitions of February 2002.

    2.  Each motion was on top of the certiorari petition but not attached by staple to the certiorari petition.

    3.  I have not as of 8/16/02 received notice of Justice Breyer's action on the recusal notice and as recently as August 14, 2002 confirmed this telefonically to the clerk's office.

                          Signed under pains of perjury



                          Vincent F. Zarrilli

                          8/16/02

A 18



**VINCENT F. ZARRILLI**
**BOX 101, HANOVER STATION**
**BOSTON, MA  02113**
**PHONE:  617-523-9210**
**FAX:  617-523-6765**

May 5, 2004

Public Records Officer
Office of the Clerk
U.S. Supreme Court
1 First St., NE
Washington, DC  20543

Dear Public Records Officer;

Pursuant to the U.S. Freedom of Information Act, 5USC553, please send me the below listed documents:

1.  All those documents setting forth the duties and responsibilities of all clerks and assistance clerks as to the handling, docketing and filing of all the papers submitted to the court in any case seeking certorari.

If a cost is involved, please notify me by both US mail and fax.  I will send the amount promptly.

Cordially,

Vincent F. Zarrilli

A-19

<table>
<tr><td colspan="2">U.S. POSTAL SERVICE     <b>CERTIFICATE OF MAILING</b></td></tr>
<tr><td colspan="2">MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT PROVIDE FOR INSURANCE—POSTMASTER</td></tr>
<tr><td colspan="2">Received From:<br><i>Vinct F Zarrill</i><br><i>Box 101 Hanover Sta</i><br><i>Bostn MA 02113</i></td></tr>
<tr><td>One piece of ordinary mail addressed to:<br><i>Public Records Officer</i><br><i>Office of The Clerk USS.cT</i><br><i>1 First St N.E.</i><br><i>Wesington, D.C 20534</i></td><td>$0.90<br>0002107<br>24-01</td></tr>
<tr><td colspan="2">PS Form 3817, Mar. 1989</td></tr>
</table>

U.S. POSTAGE
PAID
CHARLESTOWN,MA
MAY 08, 04
AMOUNT
$0.90

BOX 101, HANOVER STATION
BOSTON, MA 02113
PHONE: 617-523-9210
FAX: 617-523-6765

*EXHIBIT N*

June 3, 2003

Chief Justice William H. Rehnquist
U.S. Supreme Court
1 First Street, NE
Washington, DC 20543

Dear Justice Rehnquist;

      I would very much appreciate your sending me a copy of the rules and regulations which apply to clerks of the U.S. Supreme Court as to the docketing of all papers, motions, etc. as received from the various parties to a case pending or closed in the U.S. Supreme Court.

      I would also like to know whether there exists any regulation, order otherwise granting clerks of the U.S. Supreme Court any exception to the rules for clerks as contained in the publication entitled "A Guide to Judicial Policies and Procedures."

                                  Cordially,

                                    Vincent F. Zarrilli

**U.S. POSTAL SERVICE: CERTIFICATE OF MAILING**
MAY BE USED FOR DOMESTIC AND INTERNATIONAL MAIL, DOES NOT
PROVIDE FOR INSURANCE—POSTMASTER

Received From:
Vincent F. Zarrilli
Box 101 Hanover Station
Boston, Ma 02113

One piece of ordinary mail addressed to:
Chief Justice William Rehnquist
U.S Supreme Court
1 First St N.E.
Washington D.C. 20543

PS Form 3817, Mar. 1989

U.S. POSTAGE PAID CHARLESTOWN, MA 02129 JUN 04 03 AMOUNT $0.90 0002107450

*A 20*